UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

**ROBYN SYNDER,**

    **Plaintiff,**

**v.**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER OF SSA,**

    **Defendant.**

**CIVIL ACTION NO. 5:21-29-KKC**

**OPINION AND ORDER**

\*\*\* \*\*\* \*\*\*

Plaintiff Robyn Snyder brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying her claim for disability insurance benefits. The Court, having reviewed the record, will affirm the Commissioner's decision.

Snyder initially applied for disability benefits when she was 37, alleging she became disabled two years prior. After a hearing, the ALJ issued a ruling denying her benefits. She filed an action seeking review in this Court. However, the Commissioner moved to remand the matter to the Social Security Administration (SSA) for further proceedings, and the Court granted that motion. The SSA Appeals Council then remanded the matter to the ALJ for a second hearing. In its order, the Appeals Council determined that the ALJ's finding that Snyder's daily headaches were not severe was not supported by the evidence. The Appeals Council further found that the ALJ had not accounted for the headaches in assessing Snyder's residual functional capacity (RFC) and that the ALJ had not adequately evaluated Snyder's physical impairments in combination. The ALJ then conducted a second hearing and again denied Snyder benefits.

This Court's review of the decision by the ALJ is limited to determining whether it "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir.2009).

In denying Synder's claim, the ALJ engaged in the five-step sequential process set forth in the regulations under the Social Security Act (the "Act"). 20 C.F.R. § 404.1520(a)-(e). *See, e.g., Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined that Synder has not engaged in substantial gainful since June 25, 2013. (Administrative Record ("AR") at 1485.)

At step two, the ALJ determined that Snyder suffers from the severe impairments of affective disorders, anxiety disorders, and post-traumatic stress disorder. This time around, the ALJ also found that Snyder suffers from a severe impairment of migraine headaches. (AR at 1485.)

At step three, the ALJ found that Snyder does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR at 1486.)

Before proceeding to step four, the ALJ determined that Snyder has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

- Her work is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple, work-related decisions and with few, if any, workplace changes;
- she should have only occasional interaction with the general public and co-workers and only occasional supervision;
- she should avoid even moderate exposure to bright lighting and noise levels in excess of level 3 in the DOT; and
- she should avoid concentrated exposure to fumes, odors, dusts, gases, poorly ventilated areas, and chemicals.

2

(AR at 1488.)

At step four, the ALJ determined that Snyder is capable of performing past relevant work as a coffee maker. (AR at 1491.)

While the finding that Snyder is capable of performing past relevant work required a finding that she is not disabled, the ALJ also went on to consider whether, considering the RFC described above and Snyder's age, education, and work experience, there are jobs that exist in significant numbers in the national economy that Snyder can perform. (AR at 1491-92.) The ALJ determined that such jobs do exist and, thus, Snyder is not disabled for that reason also. *Id*.

Snyder's first allegation of error deals with the ALJ's determination that the record did not support Snyder's claims regarding the intensity, persistence, and limiting effects of her migraines. The ALJ did recognize that Snyder had "an extensive medical history for migraine headaches" and that she often appeared at medical examinations in a hat, sunglasses, and earplugs. He noted that she continued to experience the headaches despite medication, and he found that the migraine headaches constituted a severe impairment for Snyder.

In her motion, Snyder points to evidence that she suffers migraine headaches. But there is no dispute that Snyder suffers from migraine headaches. The issue here is how the headaches limit Snyder's ability to perform work-related activities. Consistent with Snyder's testimony, the ALJ determined that Snyder should not be subjected to even moderate exposure to bright lighting and noise levels in excess of level 3 in the DOT. Snyder does not state what further limitations she believes should have been included in her RFC or point to any medical evidence that would support any further limitations.

Snyder cites *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007), a case that deals with an ALJ's hesitancy to accept fibromyalgia as a severe impairment due to the lack of objective testing that could confirm its existence. *Id*. at 234. The Sixth Circuit determined that, "in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant." *Id.* at 245. Snyder argues that the ALJ similarly erred in looking to the objective medical evidence to determine how migraines limit the work functions she can perform. She argues that relying on such findings is "nonsensical and inappropriate." (DE 12-1 at 7.)

Snyder points to an SSA Policy Interpretation Ruling (SSR 19-4p) regarding how to evaluate cases involving primary headache disorders, including migraines. That ruling makes clear, however, that, in assessing a person's RFC, "We consider the extent to which the person's impairment-related symptoms are consistent with the evidence in the record . . . Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC."

Thus, in assessing Snyder's claims regarding the limitations posed by her migraines, the ALJ properly reviewed the record to determine if the claims were supported by objective medical evidence and whether they were consistent with the record as a whole. The ALJ considered the opinion of Dr. Lauren Frey, who found that the medical evidence did not support any physical restrictions or limitations on Snyder's ability to work. (AR at 1673.) Snyder argues that she has no physical pain but instead has "sensory" pain, "which leads to vomiting and visual phenomena which leads to functional disability." But it is not enough to simply assert that she has a vague "functional disability." She must explain what work functions she is unable to perform and cite

4

supporting medical evidence. She cites no medical evidence in the record that would require greater restrictions on her ability to work than the ALJ included in the RFC.

Snyder also argues that the ALJ erred in failing to give her treating physician, Dr. Jonathan Smith, proper deference. Pursuant to the "treating physician rule," in assessing medical evidence, the ALJ generally must give greater deference to the opinions of treating physicians. *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This rule applies to claims that were filed, like Snyder's, prior to March 27, 2017. Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

Snyder does not point to any medical opinion in the record by Dr. Smith, and the Court has been unable to locate one. Snyder cites only one document, which consists of treatment notes by Dr. Smith dated April 8, 2015. (DE 12-1 at 11; AR at 680-87, Smith Notes.) In the document, Dr. Smith notes Snyder's persistent headaches and the fact that a nicotine patch had significantly reduced her headaches but had increased her blood pressure. Dr. Smith renewed Snyder's morphine prescription at the visit. Later notes by Dr. Smith in 2017 state that Snyder was working on creating a non-profit support website for others with her headache disorder. (AR at 1408.)  Dr. Smith expresses no opinion as to Snyder's inability do work-related functions. Accordingly, nothing in the treatment notes requires any greater limitations on Snyder's ability to work than that included in the RFC.

Finally, Snyder argues that the ALJ improperly determined that she did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. She again cites SSR 19-4p, which provides that, even though primary

5

headache disorder is not a listed impairment, it alone or in combination with other impairments may medically equal a listed impairment. The ruling provides that epilepsy (listing 11.02) is the most closely analogous impairment to primary headache disorder. The ALJ considered whether Snyder's primary headache disorder met this listing, and he determined that it did not. Snyder argues that she meets this listing because she must stay at times in a dark, quiet room and because, with the headaches, she experiences an aura, nausea, vomiting, lightheadedness and sensitivity to touch, lights and sounds.

SSR 19-4p requires that, for primary headache disorder to meet listing 11.02, the claimant must submit evidence of the frequency of the headache events and limitations in functioning associated with the headaches or its treatment. The ALJ determined that Snyder had not presented medical evidence that would support a finding that her headache disorder meets the severity of the 11.02 listing. She cites no such evidence before this Court either.

For all these reasons, the Court hereby ORDERS as follows:

1) Snyder's motion for summary judgment (DE 12) is DENIED;

2) the Commissioner's motion for summary judgment (DE 16) is GRANTED; and

3) a judgment consistent with this opinion will be entered.

This 28th day of September, 2022.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY